# Elyton Land Co. *et al. v.* Dowdell.

113  177
125  276
125  277

113  177
133  255

*Bill in Equity by Stockholder to set aside a Sale of Corporate Assets.*

1. *Corporations; effect of authority for one corporation "to take stock" in another corporation.*—A corporation, though authorized by its charter "to take stock" in other corporations, can not, without the consent, and contrary to the preference of stockholders, sell all of its property to another corporation, and take in payment thereof, to be distributed among its shareholders, stock of the purchasing corporation.

2. *Sale of entire assets of a corporation; right of stockholder to have it annulled; estoppel.*—A sale of all its assets by a solvent corporation to another corporation, the purchase price being the stock in the latter company, can be set aside at the instance of a shareholder in the former corporation, who did not participate in the sale; and the fact that bonds secured by a lien upon part of its assets had been given by the vendor corporation to its shareholders in payment of dividends and were accepted by them, and that, in accordance with the contract of sale, the purchasing corporation for these dividend bonds gave its bonds secured by a first mortgage on all its property, being that and no other than that acquired from the vendor company, does not estop the shareholder of the vendor corporation, who did not participate in the sale and owned none of the dividend bonds, from setting aside and annulling said sale.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. H. A. SHARPE.

The original bill in this case was filed by Annie Dowdell, on October 6, 1894, against the Elyton Land Company and others. Pending the hearing of the cause Annie Dowdell died, and her death being suggested, the suit was revived in the name of James S. Dowdell, as executor. The purpose of the bill is sufficiently stated in the opinion.

To the bill the defendants filed their plea supported by answer. This plea sets forth the history of the dividend trust bonds, and states that the bonds having been issued in lieu of payment of dividends, were and are a valid obligation of the defendant, the Elyton Land Company, and founded upon a good and valuable consideration;

12

[Elyton Land Co. et al. v. Dowdell.]

that the complainant having accepted her proportion of said bonds, with the full knowledge of the facts relating to the issuance thereof, she is estopped to deny that they were issued for a valuable consideration, and that they are binding obligations of the Elyton Land Company. The facts disclosed in this plea and answer are sufficiently stated in the opinion. The plea and answer were excepted to upon the following grounds : 1st, that the plea presents no defense to the bill of complaint ; 2d, there were no facts averred in the plea or answer which raises any question of estoppel as to complainant's right to relief ; 3d, the plea, supported by answer, presents a purely immaterial issue and its allegations are not relevant to the case made by the bill of complaint. This plea having been submitted on the above exceptions, the court rendered a decree sustaining such exceptions, and holding that the plea was insufficient as a defense to the bill of complaint. From this decree the present appeal is taken, and the rendition thereof is assigned as error.

ALEX T. LONDON and TOMPKINS & TROY, for appellants. 1. The right to alter, amend or repeal the charter of the Elyton Land Company, is expressly reserved by the constitution of 1875, and as said by BRCKELL, C. J., in *Supreme Commandery v. Ainsworth*, 71 Ala. 436 : "The power being reserved, its exercise can not, of course, be said to impair the obligation of the grant." Taylor on Corp., § 498 ; *Hamilton Gas, &c. Co. v. Hamilton*, 146 U. S. 258. Under this reservation, the State may change the relations between the stockholders and the corporation, and as between themselves, and impose new burdens on the stockholders.—*Miller v. State*, 15 Wall. 478. Can make them personally liable for corporate debts thereafter contracted.—*Sherman v. Smith*, 1 Black, 587. And the reserved powers to alter or modify a charter confers the right to interfere with the vested or property rights of the shareholders.—2 Morawetz Corporations, § 1103.

2. We insist then that under the facts disclosed by the pleas the bonds are general obligations of the Land Company and that all of its property is liable for their payment. The plea shows that the company had reached a point where it was unable to pay their bonds, or even to meet the instalments of interest on them,

and where, unless some arrangement should be made, its property would be sold at a sacrifice and everything lost to its stockholders. Under this condition of its affairs, its stockholders, the holders of 1995 of its 2,000 shares, actually authorize or assent by acquiescence to a sale of its property to the new company, that company taking up the bonded debt of the old company and issuing to it its stock in payment for that property, a full consideration. Now, can complainant, the holder of five shares, have this transaction set aside and compel the old company to take back that property? If she does, it is clear that the old company will not be rid of its old debts; they will be charges against the property, and as the company has no means of paying them, its creditors will subject that property to their payment and the entire assets of the corporation will be absorbed in their payment and the stockholders will receive nothing on their stock. This, of course, is upon the presumption that the facts alleged in the plea are true, which must be assumed on this hearing. The effect would be to say to the holders of these five shares that, although the facts show the effect of doing what she asks to be done will bankrupt this corporation and cause all of its property to be absorbed in the payment of its debts and will utterly destroy the value of the five shares held by her as well as that of the nineteen hundred and ninety-five shares held by other stockholders, yet a court of equity will grant her the relief she asks for, however inequitable it is, and however destructive it may be to the interest of those who oppose it, and whose interest is just exactly three hundred and ninety-nine times greater than hers. If the facts of this plea are true, and we repeat that for the purposes of this argument they must be assumed to be true, the effect of granting complainant the relief she asks for would be of no benefit to her and would be destructive of the interests of the holders of 399–400 of the common property. It may be if the court says she is entitled to such relief, that the other stockholders, to save themselves, will be forced to buy in her worthless stock at a fictitious valuation, and thereby such a decree would result in great benefit to her; but courts of equity were certainly not created for the purpose of aiding and assisting in such schemes, for to do so would not be equity, but it would be most inequitable. In such a case, a court of

equity, on the filing of a proper bill has ample power to protect the interest of the dissenting stockholder, and can so mold its proceedings as to give her or him all that he or she is entitled to in equity and good conscience; the value of his or her stock. This is justice to those holding the 399-400, and no injustice to the holder of the remaining one four-hundredth.—*Lauman v. L. V. R. R. Co.*, 30 Penn. St. 42; *Treadwell v. Salisbury Mfg. Co.*, 7 Gray, 393; *Young v. Railroad Co.*, 76 Mich. 485; *Sewell v. The East Cape, &c. Co.*, 50 N. J. Eq. 717; *Buford v. N. L. P. Co.*, 3 Mo. App. 159; *Miners' Ditch Co. v. Zellerbach*, 99 Am. Dec. 300; 5 Thompson Com. on Corp., §§ 6541-2.

3. The complainant in this case is not entitled to the right which he asserts. Conceding that the transaction was *ultra vires*, the complainant had the right to prevent the consummation of the deal, and it was her duty to act promptly by suit; and by her failure to do this, she is estopped from now asserting the right she claims. *Ervin v. R. & N. Co.*, 27 Fed Rep. 625; *Rabe v. Dunlap*, 25 Atl. Rep. 959; *Kent v. Mining Co.*, 78 N. Y. 159.

GORDON MACDONALD and SMITH & WEATHERLY, *contra*.
1. The attempted sale of the Elyton Land Company to the Elyton Company, of all its property is *ultra vires* the charter of the Elyton Land Company, and a breach of its contract with its stockholders.—*Nathan v. Tompkins*, 82 Ala. 437; 2 Cook on Stockholders, § 666; *Byrne v. Schuyler E. & M. Co.*, 28 L. R. A. 304; *Mills v. R. R. Co.*, 41 N. J. Eq. 1; *Com. Fire Ins. Co. v. Board of Rev.*, 99 Ala. 1; *People v. Ballard*, 134 N. Y. 269; *Dodge v. Woolsey*, 18 How. 331; *Knoxville &c. R. R. Co. v. Knoxville*, 22 Fed. Rep. 758; *Easun v. Brewing Co.*, 51 Fed. Rep. 156; *Mason v. Pewabic Mining Co.*, 133 U. S. 50.

2. Neither the directors, nor a majority of the stockholders, have power to sell all of the corporate property as against the dissent of a single stockholder, unless the corporation is in failing condition.—2 Cook on Stocks, § 667; *Abbott v. American Rubber Co.*, 33 Barb. 578; *People v. Ballard*, 134 N. Y. 269; *Smith v. N. Y. H. Co.*, 56 How. Pr. 78; *Copeland v. Citizens Gas L. Co.*, 61 Barb. 60; *Gouland v. Castillon*, 12 Barb. 127; *Bird v. Bird*, L. R. (1 Ch.) 358; *Adriance v. Roome*, 52 Barb. 399; *Bradly v. Mayor, &c.*, 16 How. Pr. 432; *Sampson v.*

*Smith*, 15 Mass. 347 ; *Astor v. Gas Light Co.*, 33 Hun. 333. If the purpose of effecting a practical dissolution of a corporation by a sale of all of its property to another concern is not the *bona fide* discontinuance of the business, winding up its affairs and dividing its profits, but contemplates a continuance of the business by the new corporation, the law now is, whatever it may have been in remote periods, that a dissenting stockholder may prevent the sale. This is laid down in the extremely able and exhaustive opinion in *Kean v. Johnson*, 9 N. J. Eq. 401 ; 2 Cook on Stocks, § 667 ; *Erwin v. Oregon &c. Co.*, 27 Fed. Rep. 695.

3. The attempted sale and conveyance was a fraud on the rights of the stockholders of the Elyton Land Company, at least such of them as were not holders of the dividend trust bonds. It is not for any court to say whether the transaction would result ill or well for complainant. Complainant stockholder had the right to say, "I am not willing," and against her gainsaying, it can not legally be done.—*Stevens v. Rutland &c. R. R. Co.*, 29 Vt. 545 ; *Central R. R. Co. v. Collins*, 40 Ga. 582.

4. The dividend trust bonds were not general debts against the Elyton Land Company, but were merely evidences of a distributive interest or share in the bills receivable held by that company in trust for the holders of said bonds. A guarantee of a dividend is nothing more than a pledge of a fund legally applicable to the purposes of a dividend. Dividends are not payable out of the capital of a corporation, and agreements to pay dividends out of the capital stock are opposed to public policy and void. At most, such agreements are charges upon present or future surplus earnings.—Boone on Corporations, § 135, note 8 ; *Ib.* § 115, note 10 ; *Field v. Lamson*, 162 Mass. 388 ; s. c. 27 L. R. A. 136 ; *Elkins v. Camden*, 26 N. J. Eq. 233 ; *Elevator Co. v. M. & C. R. R. Co.*, 85 Tenn. 703 ; *Dickinson v. Railroad*, 7 W. Va. 390 ; *Lockhart v. Van Alstyne*, 18 Amer. Rep. 156 ; *Taft v. Hardford &c. R. R. Co.*, 5 Amer. Rep. 575 ; *Miller v. Ratterman*, 47 Ohio St. 141.

5. There is no estoppel against appellee in this case, growing out of his testatrix's having once owned some of the dividend trust bonds. To create an estoppel some person must have been misled to his injury by the words or conduct of the party against whom the estoppel is

invoked.—*Mills v. Cen. R. R. Co.*, 41 N. J. Eq. 1;
*George v. Cen. R. R. Co.*, 101 Ala. 607. There is no
estoppel where the contracting parties know that the con-
tract is *ultra vires*. It is a fundamental ground of
estoppel *in pais* that the person seeking to assert the
estoppel must have been misled to his injury. This
does not happen where a person enters into an *ultra vires*
contract with the company, knowing that the contract
was *ultra vires*, and taking his chances of the company
carrying it out. In such cases it can not be justly said
that he has been induced to act as he has acted by the
conduct of the corporation.—5 Thomp. on Corp., § 6009;
*Mills v. Cen. R. R. Co.*, 41 N. J. Eq. 1.

COLEMAN, J.—The complainant, a stockholder own-
ing five shares in the Elyton Land Company, a corpora-
tion, filed the present bill, for the purpose of annulling
and setting aside a sale and conveyance of its property
assets to the Elyton Company, a corporation, and to set
aside and annul a mortgage executed by the Elyton
Company to the Maryland Trust Company, as trustee, to
secure the payment of certain bonds issued by the Elyton
Company.

To the bill the respondent filed a plea and answer in
support of the plea, to which the complainant excepted
as being insufficient. The court sustained the excep-
tion, and this ruling is the only error assigned. In De-
cember, 1870, the Elyton Land Company was incorpora-
ted, for the purpose of "buying lands and selling lots
with the view to the location, laying off and effecting
the building of a city at or near Elyton" in Jefferson
county, Alabama. Its capital stock was two hundred
thousand dollars, divided into two thousand shares of
one hundred dollars each. In February, 1889, the char-
ter of the Elyton Land Company, by act of the legisla-
ture, was amended and confirmed, by which its corporate
existence was continued with all its rights, privileges
and franchises for fifty years, and during such con-
tinued existence, it was authorized and empowered "to
borrow and lend money, to guarantee indebtedness for
persons and corporations, to build, own, rent, lease, and
otherwise lawfully use buildings of every kind and de-
scription, to issue bonds in amount not to exceed five
millions of dollars * * * and to take stock in other cor-

porations." Prior to the 9th day of November, 1887, it was ascertained, that the Elyton Land Company had leased and owned and had in possession, as profits, promissory notes for lots and lands sold amounting to over three million and nine hundred thousand dollars, estimated to be worth not less than three and a half millions of dollars, and at a meeting of the directors it was resolved that two millions, four hundred thousand dollars of said notes be distributed in kind as a dividend to the shareholders. By resolution adopted on the 9th day of November, 1887, so much of the former resolution as provided for a division in kind of said promissory notes, was rescinded, and in lieu thereof it was resolved that the dividend should be in the form of a certificate for twelve hundred dollars for each share of stock. By the resolution, and on the face of the certificates issued in pursuance thereof, it was provided that the dividend certificate should be paid at the option of the company in money or its bonds, bearing interest at the rate of six per cent., "which may hereafter be authorized to be issued." The certificates were issued to the shareholders, including complainant, and subsequently were paid for in the bonds of the company, as provided in the resolution and in the certificate. These bonds are denominated "Dividend Trust Bonds," and provided that the holder is entitled to the security derived from setting apart of $2,400,000 of notes given for purchase money of land and constituting a first lien thereon. The complainant, it seems, disposed of her bonds either in the market or some other way. Her rights as such bondholder are not involved in this litigation, but only her rights as a shareholder. At a meeting of the board of directors of the Elyton Land Company held November 15, 1888, it was "Resolved, that no dividends in money shall be paid the stockholders, until all of its indebtedness, including the entire principal of Dividend Trust Bonds, is paid and discharged." Payments were made upon the Dividend Trust Bonds until the number and amounts were reduced from $2,400,000 to $1,796,000. The acts and proceedings of the Elyton Land Company in these matters are not assailed by complainant's bill.

This seems to have been the relative situation of the parties when the financial depression came on, so greatly affecting the value of securities and property. On the

10th of February, 1893, "The Elyton Company" was incorporated, and we conclude from the pleadings, the incorporators consisted, if not entirely, at least of the controlling shareholders in the Elyton Land Company. Its capital stock was fixed at ten millions of dollars, divided into shares of one hundred dollars. By its charter the corporation was authorized "to buy, sell and own real, personal and mixed property, to build, own and operate furnaces, to manufacture iron, steel and industrial establishments or manufacturies of all other kinds whatsoever, to build, own and operate railroads, &c., to take, own and hold the stock of any other corporation organized for any of the purposes herein above mentioned," &c. It will be seen that the Elyton Company was authorized to engage in many enterprises not included in or contemplated by the original or amended · charter of the Elyton Land Company. The fourth section of the act of incorporation provided "That said corporation may purchase the property, real, personal and mixed of the Elyton Land Company; provided that such sale is made under the laws now in force, *and nothing in this act shall be construed to impair or in any manner whatsoever to affect the rights of any stockholder of the Elyton Land Company*," &c. We italicise the proviso. By the 7th section the corporation was authorized to mortgage its assets and property to secure any indebtedness. The Elyton Company was duly organized under the act of incorporation. At a regular meeting of the stockholders of The Elyton Land Company, a majority of the stockholders, owning three-fourths of the stock, resolved to sell its entire assets to The Elyton Company, the terms of the sale being, that the Elyton Company should pay all the liabilities of the Elyton Land Company and issue $2,500,000 of its bonds bearing five per cent. interest, payable in gold, $1,796,000 of which were to be issued to the holders of the Dividend Trust Bonds, in payment thereof, and in addition issue ten shares of its stock to each holder of one share of stock in the Elyton Land Company. The bonds of the Elyton Company matured after thirty years, a later period than the maturity of the Dividend Trust Bonds. To effect the arrangement, the Maryland Trust Company was selected as trustee. ·

The Elyton Land Company sold and transferred all its property of every kind to the Elyton Company. The

latter issued its bonds, $2,500,000, and executed a mortgage to the Maryland Trust Company, upon all the property purchased from the Elyton Land Company to secure these bonds. The stock was also issued and delivered to such of the stockholders as were willing to receive it, in exchange of the stock held by them in the Elyton Land Company. No other arrangement or provision was made to pay the shareholder in the Elyton Land Company for his share, except to accept the stock in The Elyton Company. It is alleged in the bill and not traversed in the plea, that complainant was not present, was not represented and had no notice of the meeting of the directors of The Elyton Land Compay at which it was resolved to sell its property to The Elyton Company, and to authorize the latter to execute a mortgage to secure its bonds and issue stock.

Immediately after the consummation of the transaction between the two corporations, complainant filed her bill.

If in the foregoing summary of the facts and transactions, there are any omissions, the appellant has been given the advantage. We do not doubt the right of complainant to relief, so far as the defense is rested upon the plea. In the first place, by its charter, The Elyton Company was authorized to purchase the property of The Elyton Land Company, "provided that such sale is made under the laws now in force, and nothing in this act shall be construed to *impair*, or in any manner whatsoever to *affect* the rights of any stockholder of The Elyton Land Company." At the time of the sale and transfer of its property, The Elyton Land Company was solvent, a going corporation, and its stock was very valuable. Its duties and powers were fixed by its charter, and its business evidently managed with great skill and success, for the benefit of its shareholders. The Elyton Company by its charter was authorized to engage in many enterprises not within the scope of the powers of The Elyton Land Conpany. A shareholder in the latter might not be willing to become a shareholder in the other. By the sale and transfer of the property, The Elyton Land Company divested itself of all its property and capacity to continue the business for which it was organized. If the sale stands, the owner of stock in The Elyton Land Company is compelled to accept the stock of the new corporation, or hold stock in a corpora-

tion without capital assets. We lay no stress on the argument, that by its amended charter, The Elyton Land Company is authorized "to take stock" in other corporations. It was certainly never intended by that provision, to authorize The Elyton Land Company to effect its own dissolution by a sale of all its assets, and "take the stock" of another company in payment for distribution to the shareholders or any shareholder, without the consent and contrary to the preference of the shareholder. But it is too clear for argument, that the two million shares of stock of The Elyton Company were to be issued to The Elyton Land Company, as a mere conduit to the shareholder of The Elyton Land Company, and not to be held and owned as capital assets of The Elyton Land Company. It may be that a private business corporation may sell out its entire property by and with the consent of less than all its stockholders, for the purposes of paying its debts, or for the purposes of.dissolution and settlement, but when this is the purpose, it must be clearly understood, and the terms and conditions of the sale must be within the contractual relations between the corporation and its creditors or shareholders. There can be no presumption, that a creditor or stockholder of the dissolved corporation will accept in payment of his demand, anything but money. He cannot be required to do so arbitrarily. While the plea shows the consent and ratification of the complainant to the issue of the certificate of twelve hundred dollars to the shareholder for each share of stock, and its subsequent payment by a dividend bond, it does not show consent or ratification of the sale of the property and the execution of the mortgage. It is manifest that the whole plan of organization of The Elyton Company, was in the interest of those who held the dividend bonds, without reference to the interest of the stockholder. These bonds at first maturing within three or four years were a lien or charge only upon $2,400,000 of its promisory notes, leaving all its other property unincumbered. By the arrangement, the dividend bonds, amounting to only $1,796,000, secured by a lien upon $2,400,000 of notes, were converted into gold bonds, running thirty years, and were secured by a mortgage upon all the property owned by The Elyton Land Company. The bonded indebtedness was increased over a half million dollars. The Elyton Com-

pany, from the pleading, did not own a dollar of capital other than that acquired by the purchase from The Elyton Land Company.

The facts set up in the plea do not present an estoppel as to the complainant whatever may be their effect upon the dividend bondholders, and the other stockholders, who aided in carrying out the arrangement, or have since ratified it.—*Kean v. Johnson*, 9 N. J. Eq. 401; *N. O. &c R. R. Co. v. Harris*, 27 Miss. 517.

The decree of the city court is affirmed.