# Morris *v.* Elyton Land Co. *et al.*

*Bill in Equity by Stockholder to set aside the Sale of Corporate Assets, and for the Appointment of a Receiver.*

1. *Corporations; effect of authority of one corporation to take stock in another corporation.*—A corporation, though authorized by its charter "to take stock" in other corporations, can not, without the consent and contrary to the preference of its stockholders, sell all of its property to another corporation and take in payment therefor, to be distributed among its shareholders, stock in the purchasing corporation; such act on the part of the selling corporation being *ultra vires*.

2. *Sale of assets of corporation; right of stockholder to have sale annulled; estoppel.*—A sale of all of its assets by a solvent cor-

[Morris v. Elyton Land Co. *et al.*]

poration to another corporation, the purchase price being the stock in the other corporation, can be set aside and annulled at the instance of a shareholder in the former corporation who did not participate in the sale; and the fact that bonds secured by a lien upon part of its assets had been given by the vendor corporation to its shareholders in payment of dividends and were accepted by them, and that in accordance with the contract sale, the purchasing corporation gave for these bonds its own bonds secured by a first mortgage on all of its property which was only that acquired from the vendor company, does not estop a shareholder of the vendor corporation, who did not participate in the sale and who in no way recognized the validity thereof, from setting aside and annulling said sale.

3. *Same; same; character of relief granted.*—In such a case, a bill filed to set aside and annul said sale is not a suit exclusively for the individual interest of the dissenting shareholder, but is for the benefit of the corporation and of all its shareholders; and, therefore, money compensation to the complaining shareholder for the value of its stock can not, against his objection, be decreed as his relief.

4. *Same; same; when receiver properly appointed.*—In such a case upon the filing of a bill seeking to have said sale set aside and annulled and asking for the appointment of a receiver, where, in addition to such facts, it is further shown that in the hands of the purchasing corporation the property is not improved and by mismanagement or otherwise said corporation has become financially embarrassed and has failed to pay the taxes and interest upon the bonds, it is proper, upon such showing, to appoint a receiver for said corporation.

5. *Ratification of unauthorized act; what necessary to constitute it.*—Ratification of an unauthorized act, to be binding, must be made with full knowledge of all the material facts connected therewith; and when a party relies upon ratification by acquiescence he must show that the acquiescence was made with the knowledge of all the material facts incident to the transaction.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

On the 9th day of September, 1899, the appellant, Mrs. Susie Martin Morris, as the holder of 26 1-3

shares of stock in the Elyton Land Company, filed her bill for the purpose of annulling and setting aside a sale and conveyance of the property of said company to the Elyton Company, another corporation with different powers, and to set aside and annul a mortgage executed by said Elyton Company to the Maryland Trust Co., as trustee, to secure certain bonds issued by the Elyton Company. The transactions in question were presented to this court in *Elyton Land Co. v. Dowdell*, 113 Ala. 177, which contains a statement of the salient facts, to which case reference is here made; but for the purpose of this appeal the following additional statement is made—the essential facts not being a matter of dispute between the parties.

The Elyton Land Company was incorporated in 1870, with meagre powers, and later, in February, 1889, its charter was amended by special act of the legislature, set forth in section 2 of the bill, whereby it was enacted that the Elyton Land Company should continue to exist as a corporation for the term of fifty years and whereby its powers were enlarged, but were not made near so extensive as those conferred upon the other corporation, the Elyton Company, by the act approved February 10th, 1893, incorporating the latter company, which act is also set forth in the third section of the bill. The incorporation of the Elyton Company was procured for the purpose of acquiring the property of the Elyton Land Company and was and remained without capital or assets, other than the property conveyed by the Elyton Land Company.

About Oct. 1st, 1894, the officers of the Elyton Land Company, pursuant to a vote of the majority, but not of all the stockholders, and without the consent of complainant, who was then about 15 years old, conveyed all the property of said Company to said Elyton Company for stock and bonds in the latter company. At that time only a part of the Elyton Land Company's property was incumbered, and that part was security for 1796

dividend trust bonds.  Under the contract of sale, $2,00,-000 fully paid up stock of the Elyton Company was to be issued for the $200,000 of the capital stock of the Elyton Land Company, and the former was to issue $2,500,000 of bonds, secured by a mortgage upon the entire property, and this plan was carried out; the officers and directors of the two companies being identical.

The complainant was born June 30, 1879, so that when this bill was filed she was only twenty years old, but she had intermarried with Louis C. Morris on January 25th, 1899, and as appears from the answers of respondents, her disabilities of minority were removed by decree of the Chancery Court on January 12, 1899.  It appears further, however, from the bill and affidavits of complainant and her husband that she was not informed of the transactions complained of until the summer of 1899, whereupon she promptly employed counsel to assert her rights and repudiated said transactions; the bill being filed as above stated on Sept. 9th, 1899. At the time the bill by Mrs. Morris was filed there was pending in the same court cause No. 2104, of Semmes v. Elyton Land Co., *et al.*, which proceeding is fully referred to in the bill and the papers which were embraced in the submission of the application for a receiver.  This cause originated as follows:  On the 5th day of January, 1898, a bill was filed in the same court by Semmes and Tompkins, as holders of dividend trust bonds of the Elyton Land Company, against the Elyton Company, the Land Company and the Maryland Trust Company, in and by which it was sought to have the dividend trust bonds established as a first lien upon the purchase money notes and property which had been set aside by the Elyton Land Company as a trust fund for the security of said dividend trust bons, and to have a receiver of said notes and property appointed.  But this bill did not seek to establish any lien of any kind against the other property of the Elyton Land Company not embraced in said trust fund.  Although this bill was filed on January 8th, 1898, and due service had, there was no pleading or appearance in the cause until after an amendment was filed,

which was done on the 31st of May, 1898, which amendment extended the scope of the original bill and attacked the organization of the Elyton Company and the mortgage to the Maryland Trust Company for fraud, as hindering and delaying creditors of the Elyton Land Company, and by this amendment there was a prayer for a receiver of all the lands, notes, money and other property of the Elyton Company, which had been conveyed to it by the Elyton Land Company. Shortly thereafter, on the 30th of June, 1898, F. M. Billing was, by consent, appointed receiver of all the property and assets of said Elyton Land Company, with power to sell lots, make collections and otherwise carry on the business in which the Elyton Land Company and the Elyton Company had been engaged, since which time the said Billing, as receiver, has administered the property in said cause under the decree of the court. Matters remained in this condition, without litigation, for sometime, and subsequently, on the 20th day of April, 1899, the Maryland Trust Company filed its cross-bill in said cause No. 2104, seeka foreclosure of the mortgage executed to it by the Elyton Company to secure the payment of the five per cent. bonds. Thereupon the cause remained *in statu quo* until after the complainant in this cause, Mrs. Susie Martin Morris, filed her bill, in which she charged that said suit No. 2104 was a friendly suit and was kept on the docket to carry out a proposed reorganization of the Elyton Company, referred to in the bill, the details of which are set forth in an exhibit to the affidavit of Wm. M. Martin. The bill in this cause prayed the appointment of a receiver, or if that might not be, for the extension to this cause of the receivership existing in case No. 2104. On the 26th day of September, 1899, Susie Martin Morris, the complainant, amended her bill by showing that on the 11th day of September, 1899, two days after she filed her bill, the parties to cause No. 2104 appeared in the court, filed answers admitting the averments of the cross-bill of the Maryland Trust Company to be true, consenting that a decree might be passed therein for the foreclosure of the mortgage, and thereupon presented to the chancellor an elaborate de-

cree of foreclosure, which was then and there signed. Said amendment charged that this decree was consented to and procured to be rendered in pursuance of the determination of the parties controlling the Elyton Company and the Elyton Land Company to ignore and defy her rights as a stockholder of the Elyton Land Company. Pursuant to the prayer contained in the original bill, the complainant, Susie Martin Morris, filed in the cause, on the 22d day of September, 1899, a formal application, of which due notice was given, for the appointment of a receiver, or the extension of the receivership in cause No. 2104 to her bill. Thereafter, the defendants answered her bill as amended, and on October 11th, 1899, the application for a receiver or for the extension of said receivership was submitted to the chancellor for decision upon motion and petition, bill of complaint, and affidavits on file and upon the file of papers in cause No. 2104 and on behalf of the defendants, upon their answers and affidavits in opposition to said petition. Application was also made to remove F. M. Billing as receiver, but in view of the decree which was made it is not necessary to refer to this feature of the case. In the amendment of complainant's bill, made on September 28th, 1899, as above stated, it was charged that prior to the 20th day of April, 1899, the Elyton Company had failed to pay the taxes accrued upon its property and no provision had been made for paying the same, and that said company had not the ability to pay the same, by reason of the lack of funds; and that on April 20th, 1899, when the Maryland Trust Company filed its cross-bill, the Elyton Company made default in the payment of all coupons due upon the bonds secured by the mortgage to said Trust Company, and said default had continued for six months; that the company, by reason of the lack of funds was unable to pay the bonds and was so financially embarrassed that it had consented, in June, 1898, to the appointment of a receiver of all its property.

The answers of the defendants originally set forth that

[Morris v. Elyton Land Co. *et al.*]

G. W. Hewitt, the guardian of the complainant, had exchanged certain dividend trust bonds belonging to her for five per cent mortgage bonds of the Elyton Company; that these passed to complainant's later guardian, Florence E. Haskell, and that after complainant's disabilities of minority were removed, she accepted said bonds with full knowledge of the facts from Florence E. Haskell, whereby it was claimed she had ratified their supposed exchange and thereby ratified the transactions in which said five per cent. bonds were issued. Upon the complainant filing certain affidavits, showing that the facts set up in the answers were untrue, defendants amended their answers, whereby they set up that they were mistaken in the averments made that G. W. Hewitt, as guardian, had exchanged dividend trust bonds, but averred the fact that said Hewitt, as guardian, had loaned said trust bonds to Wm. A. Walker to be returned in kind; that Walker failed to do this and after the death of Hewitt, upon a settlement between his representative and Florence E. Haskell, who had become the guardian of complainant, a demand was made by Mrs. Haskell upon Walker for a return of the bonds, according to his contract; that Walker was unable to do this; was financially embarrassed, and that Mrs. Haskell in compromise and settlement with Mr. Walker agreed to accept and did accept in lieu of the dividend trust bonds thirty-one five per cent bonds, secured by the mortgage executed to the Maryland Trust Company. Respondents further averred that the complainant was then about 17 or 18 years of age; was consulted about the settlement; and owing to the fact of Hewitt's relations to the family and of the relation of Walker thereto she approved the settlement which was made by her last named guardian and by which the guardian received the five per cent. bonds in lieu of the dividend trust bonds. The answers of the defendant company were verified upon information and belief, and certain affidavits were introduced by the defendants upon the subject of the supposed value of the complainant's stock at the time of the so-called sale to the Elyton Company .

[Morris v. Elyton Land Co. *et al.*]

On the submission of the cause upon the application for a receiver, the chancellor decreed that the transactions assailed by the bill was not binding as to the complainant who was a non-assenting shareholder of the Elyton Land Company, but that the relief to which she was entitled was the payment of the value of her shares of stock in said Elyton Land Company; and he directed that the respondent pay into the court $12,000 to await the final hearing of the cause, to be held as security for the satisfaction of the final decree; further decreeing that unless they did so within the time named, a receiver would be appointed without further notice. The required deposit was made, and thereafter the chancellor entered a decree denying the appointment of a receiving, and refusing to extend to this cause the existing receivership in cause No. 2104, which was pending in the same court. From this decree the complainant appeals, and assigns the rendition thereof as error.

CABANISS & WEAKLEY, for appellant.—The sale and conveyance from the Elyton Land Company to the Elyton Company for stock and bonds in the latter, a corporation of enlarged powers, made without unanimous consent, were *ultra vires* and void.—*Dowdell v. Elyton Land Co.*, 113 Ala. 177; *Forrester v. Boston M. C. & S. Co.* (Montana) 10 A. & E. Corp. Cases, 39 and 62; s. c. 55 Pac. Rep. 229-353; *Kean v. Johnston*, 9 N. J. Eq. 401; *Taylor v. Earle* 8 Hun. 1; *Mills v. R. R. Co.*, 41 N. J. Eq. 1; *Abbott v. Rubber Co.* 33 Barb. 578; *People v. Ballard*, 134 N. Y. 269; *Byrne v. Schuyler M. & E. Co.* (Conn.) 28 L. R. A. 304; 65 Conn. 366; *Mason v. Pewabic Co.* 133 U. S. 50; *Stevens v. R. R. Co.* 29 Vt. 545; *S. R. Co. v. Collins*, 40 Ga. 582; *N. O. &c. R. R. Co. v. Harris*, 27 Miss. 517.

The chancery court will undo an *ultra vires* act, as well as prevent same by injunction. There is an equity of recission as well as of prevention.—2 Spelling on Corporations, § 615; *City of Chicago v. Cameron*, 120 Ill. 447; *City of Knoxville Case*, 22 Fed. Rep. 758; *Byrnes' Case*, 65 Conn. 366; *Dowdell's Case*, 113 Ala. 177.

The shareholder's suit when brought is for the benefit

[Morris v. Elyton Land Co. *et al.*]

of the corporation and all shareholders. It is not the suit of the shareholder for his interest, and the same relief is granted as if the corporation sued; that is, there is recovery of all the property for the corporation.—4 Thompson Corp. § 4491; *Gorham v. Wilson*, 28 Cal. 479; 2 Pomeroy Eq. § 1095; *Mount v. Trust Co.* 5 A. & E. C. C. 592; 1 Morawetz Corp. § 262.

The majority has not the right of eminent domain in complainant's stock; they have no right to require her to accept the money value thereof, and thus enable them to accomplish their illegal purpose. The chancellor, therefore, erred in holding that complainant's rights were merely to be awarded such compensation.—*Forrester v. Boston C. & S. Co. supra; Kean v. Johnston* 9 N. J. Eq. 401; *Mills v. R. R. Co.* 41 N. J. Eq. 1.

The case was a proper one for the extension of the receivership, and this should have been done.—*Alabama Nat. Bank v. Mary Lee C. & Rway. Co.* 108 Ala. 288; *Bridgeport Dev. Co. v. Tritsch,* 110 Ala. 274; Beach on Receivers, §§ 88, 789; *Scott v. Ware,* 65 Ala. 174; Gluck and Becker on Receivers, §§ 16, 42; *Stevens v. Davidson,* 18 Gratt. (Va.) 819; *Avery v. Mfg. Co.* 27 N. J. Eq. 412; High on Receivers, § 292; *Ponca v. Mikesell,* 8 Am. & Eng. Corp. Cases, 740.

Complainant was not estopped by her holding the five per cent. mortgage bonds, under the facts shown. *Moore v. Ensley,* 112 Ala. 228.

ALEX T. LONDON and THOS. G. JONES, *contra.*—Stockholder must do equity when asking relief, especially as against creditors. Upon the case made by the bill and the sworn answers, so far as the application for a receiver is concerned, it abundantly appears that the debts for which the property was about to be sold, were debts of the Elyton Land Company—that they were fairly contracted; that the corporation was insolvent, and that, irrespective of the agreement with the Elyton Land Company and the mortgage made to secure the dividends trust bonds, they constituted a lien in favor of their holders against the property of the Elyton Land Company, superior to the rights of any stockholder therein,

and that no stockholder has any equity to stay the proceeedings. The contract and transactions involved in this case are not void; and even if they were, under the influence of our decisions, in *Allen v. Intendent of LaFayette* 89 Ala. 641; and *De La Vergne v. German Savings Institution*, 175 U. S. 40, decided by the Supreme Court of the United States, the *executed* contracts of the Land Company could not be rescinded, unless those who claim under it, and stand in its shoes, offer equity as a condition to relief. It is not possible for this sale to be *ultra vires*, in the sense that it is void. It can not be *ultra vires* the corporation, because the sovereign, the creator of the corporation, expressly authorized both the purchase and sale, and authorized the corporation to do what it did. The making of the sale was not *malum in se*, and it was not *malum prohibitum*, since it was expressly authorized by the sovereign. Ninety-five per cent. of the stockholders, who certainly had the right, under any theory of the law, to consent to the sale, have ratified and confirmed it.

It is an elementary rule that "any person claiming under one who is bound by an estopped is himself bound by the same estoppel."—Herman on Estoppel, 242. The Land Company in this matter was certainly no more than a trustee for the complainant. A *cestui que trust* asserting a trustee's rights is bound and estopped by anything which binds and estops its trustee.—*Molton v. Henderson*, 62 Ala. 426; *Peterson v. Lathrop*, 34 Pa. St. Rep. 223; *Calhoun v. Dunning*, 4 Dallas, 120; Greenleaf on Evidence, 14th ed. § 523. If the complainant in this case has no other rights than the right of her corporation, she can not annul its executed contracts, even if they are *ultra vires*. She certainly cannot use its name to rescind its contracts without restoring the *status quo*. If this suit is, in effect, a suit by the Land Company, it cannot recover; for the corporation had authority to do what it did, and its contract has been fully executed; and in no event would it be permitted to rescind unless it gave back at least what it had received. *Brown v. Atchison*, 39 Kan. 37; *Manville v. Belden Mining Co.* 17 Fed. Rep. 425; *United Line Co. v. Safe De-*

*posit Co.* 17 Fed. Rep. 425; see also as a leading case, much like this in principle, *Wilson's Case,* L. R. 12 Eq. 521.

This is a bill for specific performance in behalf of a stockholder of his contract of subscription, and relief must be moulded according to conditions at time it is asked.—*Central Agricultural & Mechanical Asso. v. Ala. Gold Life Ins.,* 70 Ala. 130; *Slee v. Bloom,* 19 Johns, 477. The right of the majority to dissolve a private business corporation has been repeatedly recognized by this court. *Wolff v. Underwood,* 101 Ala. 524-527; *Merchants & Planters Line v. Wagner,* 71 Ala. 581-587.

Whether the complainant by the retention of bonds, or by her action or inaction in reference thereto, is legally estopped, it is certain that in good morals, when an adjustment of her rights is being determined, that we should not forget that this very stock received its proportionate share of the dividend trust bonds, and that they passed into the hands of innocent holders who paid money to her guardian for the bonds which were the foundation of her claim against him, and which resulted in large assets which have now passed to and are claimed by her distributees, and that complainant does not offer to restore the *status quo.* Justice is best administered by giving to the complainant an accounting, and charging the property with a lien for whatever may be found due her, as was done in *Irwin v. Oregon R. R. & Nav. Co.,* 27 Fed. Rep. 625, 635, and in *Cary v. Houston R. R.* 52 Fed. 671. With the exception of the fact that complainant's rights as a stockholder are not disputed, this case stands almost on all-fours with the condition of affairs in the case of *Weatherly v. Capital City Water Co.* 115 Ala. 156; *Milwaukee R. R. v. Soutter,* 3 Wall. 523.

Surely no useful purpose can be subserved by virtually compelling the stockholders to go through the process which the bill shows would, at most, be an idle form; and all this, in spite of the disorganized condition of the company and inability to pay creditors, and in the face of the fact that this condition of things must last, until the

property is sold out by a decree in this case.—*McDougald v. Gardner*, L. R. 1 Ch. Div. 14.

Appointment of a receiver is wholly unjustifiable. It is well settled by numberless decisions and text-books that the sole object of the appointment of a receiver is to prevent fraud, save the subject of the litigation from material injury or wrest it from threatened destruction. The object is to preserve the *status quo*, to prevent injury to the rights of interested parties, or any impairment to the full fruition of the final decree. There is no danger of this sort possible here. It has always been the excellence of equity that it has adapted its remedies to the exigencies of the cases, and considered the hardship and wrong which would result therefrom.—*C. & W. R. R. Co. v. Witherow*, 82 Ala. 190; *Fretwell et al v. McLemore, et al.*, 52 Ala. 124.

That there are creditors to the extent of nearly two million dollars cannot be doubted. It is shown by the proceedings in this very case that this has been judicially ascertained in a decree to which the Land Company was a party, and that decree bound every stockholder in the absence of fraud, mistake or collusion, which are not here charged.—Cook on Stocks and Stockholders, § 209; *Moore v. Silver Mining Co.* 104 N. C. 535; Morawetz on Corporations, § 619; *Graham v. B. & H. R. R.*, 118 U. S. 605. Although the stockholder "may be ultimately liable in respect of the judgment therein rendered, yet where judgment goes against the corporation, it establishes *as conclusively as any judgment* can, the matter in litigation."—Thompson on Corp., § 3392.

The board of directors had the authority and power to adopt the resolution to distribute a dividend to the stockholders even under our strongest constitutional provisions. The right of the board of directors of a corporation to declare a dividend under the facts as shown in this case cannot be questioned, and when dividend was declared, the corporation became debtor to the stockholders for their proportionate share.—*Leland v. Hayden*, 102 Mass. 543. It is in no way shown that the declaration for a dividend was not *bona fide*, or that it

[Morris v. Elyton Land Co. *et al.*]

was a good dividend, and that the bonds issued to pay it in lieu of making the distribution of stock, were binding obligations against the company.—9th Am. & Eng. Ency. of Law (2d ed.) 695; 2 Cook on Corp. §§ 541-2; Morawetz on Corp. §§ 450-1.   (a)   A dividend when properly declared by the directors of a corporation becomes the property of the stockholders distributively and can not be recalled, though the company become insolvent before the dividends are paid.—2 Thompson on Corp. §§ 2126, 2138-39, 2174; Morawetz on Corp. § 445, Id. § 838; 2 Cook on Corp. § 541.   (b)   A dividend thus declared becomes the debt of the corporation to the stockholder and may be recovered by an action at law.—2 Thompson on Corp. §§2127-8; 1 Mor. on Corp. §§ 450-1; Cook on Corp. §§ 541-2; 9 Am. and Eng. Ency. Law, (2d ed.) 690.   (c)   The declaration of dividends rests in the discretion of the directors.—2 Thomp. on Corp. § 2381; 1 Mor. on Corp. § 446; 2 Cook on Corp. § 545.   (d·)   Where a dividend has been declared and a fund appropriated to its payment this fund acquires the character of a trust fund, the property of the stockholders.—2 Thompson on Corp. § 2131.   (e)   Dividends are payable out of earned profits, although they may be represented by bills receivable or notes payable in the future.—5 Am. & Eng. Ency. of Law (1st ed.) 728; *Park v. Grant Locomotive Works*, 40 N. J. Eq. 114.   (f) Where scrip dividend is issued, it may be made convertible into bonds, or bonds may be issued in lieu of cash. 9 Am. and Eng. Ency. of Law, (2d ed.) 695; 2 Thompson on Corp. § 2169.   Bonds may be issued in lieu of cash.—2 Thompson on Corp, § 2169; 2 Cook on Corp. § 766, p. 1701.

PER CURIAM.—The complainant, Susie Martin Morris as the owner and holder of 26 1-3 shares of the stock in the Elyton Land Company filed her bill for the purpose of setting aside a sale and conveyance of the property of said company to the Elyton Company, another corporation with different powers, for stock and bonds in the vendee company, and to set aside and annul a mortgage executed by the said Elyton Company to the Maryland Trust Company, as trustee, to secure certain

bonds issued by the Elyton. Company. The bill also prayed for the appointment of a receiver or that the receivership in the cause, No. 2104, of *Semmes et al. v. The Elyton Land Co. et al.*, pending in said chancery court be extended to this cause; making the parties in No. 2104, parties respondent to this bill. From the decree of the chancellor refusing the application for the appointment of a receiver or the extension of the receivership in cause No. 2104, this appeal is prosecuted.

The facts in this case are very similar to those in the case of *Elyton Land Co. v. Dowdell*, 113 Ala. 177. Indeed, the same transaction complained of in that case as being *ultra vires* the corporation, is the transaction that is here assailed as *ultra vires*. The bill in that cause was filed by a dissenting shareholder in the Elyton Land Co. against the Elyton Land Co., Elyton Company, and the Maryland Trust Co., who are the same parties respondent to the present bill. This bill is by a non-assenting shareholder in said Elyton Land Co., said complainant being at the time of the transaction complained of an infant, not having attained her majority even at the date of the filing of the bill, though her disabilities of nonage had been removed by a decree of the chancery court in January preceding the institution of this suit.

The legal questions here involved as to the rights of complainant, as a non-assenting stockholder, growing out of the same transaction, and attended, for all practical purposes, with substantially the same state of facts, were discussed in the case of *Elyton Land Co. v. Dowdell, supra.* We have no desire to renew that discussion or to reiterate what was there said. It was there decided that the transaction here complained of was an act *ultra vires* the corporation. The act of the legislature, which it is here insisted authorized the sale and conveyance by the Land Company of its property to the Elyton Company, was there considered, and it was decided that that act did not confer the power and authority of a sale and transfer of all of the property of the corporation by such corporation without the consent of all of its shareholders, and in the absence of the unanimous consent of its

shareholders, the transaction was *ultra vires.* The doctrine there laid down, and to which we adhere, not only rests upon the soundest principles of reason and justice, but is also supported by authorities and decisions of the highest courts of the land, wherein the question has been discussed with great ability and profound reasoning. In corporate enterprises, the doctrine there asserted alone affords protection and security to the weak against the strong, to the otherwise helpless minority stockholders, against the wrongs and oppression of the majority. Any departure from this just and wholesome doctrine would withdraw that security and protection, and leave the minority stockholder completely at the mercy of the majority. In support of what was said upon this question in *Elyton Land Co. v. Dowdell, supra,* we cite the following authorities in many of which the subject is ably treated: *Forrester v. Boston M. C. & S. Co.,* 10 Am. & Eng. Corp. Cases, 39, 62; s. c. 55 Pac. Rep. 229; *Kean v. Johnson,* 9 N. J. Eq. 401; *Mills v. R. R. Co.,* 41 N. J. Eq. 1; *Abbott v. Rubber Co.,* 33 Barb. 578; *People v. Ballard,* 134 N. Y. 269; *Byrne v. Schuyler M. & E. Co.,* (Conn.) 28 L. R. A. 304, 65 Conn. 336; *Mason v. Pewabic Min. Co.,* 133 U. S. 50; *Stevens v. R. R. Co.,* 29 Vt. 545; *R. R. Co. v. Collins,* 40 Ga. 582; *N. O., J. & G. N. R. R. Co. v. Harris,* 27 Miss. 517; *City of Knoxville v. R. R. Co.,* 22 Fed. Rep. 578; 2 Cook on Corp., (4th ed.), §§ 669 *et seq.*

We think there can be no doubt of the proposition, that a court of chancery can and will undo an act, which is *ultra vires,* as well as prevent the same by injunction. There is an equity of rescission as well as of prevention. 2 Spelling on Corp. § 615; *City of Chicago v. Cameron,* 120 Ill. 447; *City of Knoxville v. R. R. Co. supra; Byrne's Case,* 65 Conn. 336; Elyton Land Co. v. Dowdell, supra.

The shareholder's suit, when brought is for the benefit of the corporation and all shareholders. It is not the suit of the shareholder for his individual interest. The relief granted is the same, as if the corporation sued.—4 Thompson Corp., § 4491; 2 Pomeroy's Eq., § 1095; 1 Morawetz Corp., § 262; *Mount v. Radford Trust Co. et al.* 5 Am. & Eng. Corp. Cases (N. S.), 92.

It would necessarily and logically follow from this

[Morris v. Elyton Land Co. *et al.*]

principle that a moneyed compensation to the complaining shareholder for the value of his stock could not against his objection be decreed as his relief. To do so would be nothing more nor less than compelling the shareholder to sell his stock, which a court of equity has not the power to do. That it would be to the benefit of the corporation and all other shareholders in it, to let the transaction stand and compel the dissentient to accept compensation for his stock, is an argument that rests upon no higher grounds than that of expediency. In the administration of justice by the courts, principle should never be sacrificed at the altar of expediency.— *Forrester v. Boston O & S. Co., supra; Kean v. Johnston, supra; Mills v. R. R. Co., supra; Stevens v. R. R. Co. et al.,* 29 Vt. 545.

It is contended by the appellee that the complainant is either estopped to question the transfer to the Elyton Company or that she has ratified the transfer, because she has not surrendered or offered to surrender certain Elyton Company five per cent. bonds issued by that company to take up the dividend bonds of the Elyton Land Company and for other purposes, which her guardian Mrs. Haskell, during complainant's minority, accepted in compromise and settlement of a claim against G. W. Hewitt and W. A. Walker. The facts in reference to this transaction appear in the affidavits of Mrs. Morris and A. W. Haskell. From them it appears that the bonds went into the possession of the husband of Mrs. Morris, that she had never seen them, did not know how they were secured or that they were secured at all. Until complainant did some act recognizing or asserting the validity of the mortgage, as by claiming rights under it, her mere retention of the bonds cannot be considered a ratification of the transfer and mortgage. The case has no element of estoppel. The acts complained of were not done, nor did any of the defendants perform any acts, upon the faith of such retention of the bonds. The bonds came to the defendant without any act of hers. She has neither asserted nor attempted to assert any right under them, has not tried to collect them even as debts. She was not bound to surrender them to the de-

fendants or to the court, and her rights are not impaired by the mere holding of said bonds.  It furthermore appears from the affidavits filed on behalf of complainant, that complainant knew nothing of the reorganization scheme, nor of the transfer by the Elyton Land Co. of its property to the Elyton Company, nor of execution of the trust deed or mortgage by the Elyton Company, to the Maryland Trust Co., trustee, nor of the issuance of the five per cent. bonds, until after her marriage and until within a short time before the commencement of her suit, when she was first informed by her husband of the facts, and she promptly repudiated the whole transaction and authorized her husband to employ counsel and institute necessary proceedings to protect her rights and interests as a stockholder in the Elyton Land Co.  Under these facts it is manifest that there is no room for the indulgence of any inference of implied ratification on her part.  What we have said in *Moore v. Ensley,* 112 Ala. 228, is applicable here, and we think that case as an authority is conclusive on the question of ratification under the facts in this cause.

The application for a receiver was heard on the bill as amended and exhibits, and answers of respondents, and upon affidavits filed in support of the bill and answers.  Upon the undisputed facts in the case, we are of the opinion that the application for a receiver should have been granted, and that the receivership in cause No. 2104 pending in said chancery court should have been extended to this cause.  From the action taken by the chancery court, it is evident that the chancellor was of the opinion that upon the facts the complainant was entitled to a receiver in the absence of a deposit by the respondents with the register of the court of $12,000 as a security for the complainant by way of compensation for her stock in the event of her recovery upon a final hearing.  But in this alternative provision, the learned chancellor misconceived the character of the complainant's suit as well as the nature of relief to which she was entitled.  For the suit, though brought in her name, was in legal contemplation and effect a suit by the corporation, and the relief, if any had, would be a recovery for

the corporation. That the case is a proper one for the extension of the receivership upon the conceded facts is shown by the following authorities: Beach on Receivers, §§ 88, 789; Gluck & Becker on Receivers, 42, § 16; High on Receivers, § 292; *Ala. Nat. Bank v. Mary Lee C. & R. Co.,* 108 Ala. 288; *Bridgeport Dev. Co. v. Tritsch,* 110 Ala. 274; *Scott v. Ware,* 65 Ala. 174; *Stevens v. Davison,* 18 Gratt. 819; *Ponca Mill Co. v. Mikesell,* 8 Am. & Eng. Corp. Cases, (N. S.), 740.

The decree of the chancery court is reversed and the cause remanded.