THE TOWN OF MIDDLETOWN vs. THE BOSTON & NEW YORK AIR LINE RAILROAD COMPANY.

The bondholders of a railroad company were, after foreclosure of a trust mortgage of the road, incorporated as a new company to succeed to all the rights of the old, with a provision that the capital stock should be forty thousand shares, of which thirty thousand should be preferred and ten thousand common stock, and that no dividend should be made on the common stock until after one of seven per cent. had been made on the preferred.  The charter of the old company gave it power to lease the road to any other connecting company; that of the new company requiring a vote of three fourths for the purpose.  Held that the company had power, by a three fourths vote, to lease the road for ninety-nine years to a connecting road at a fixed annual rental.

And the court refused to set aside such a lease although the entire rental was but four per cent. on the preferred stock, and was to go, not to the company, but directly to the preferred stockholders as a percentage on their stock.

By the defendant company's charter the old bondholders were authorized to convert their bonds into its stock.  The plaintiff town was a holder of some of the common stock.  Held that it could not, in its suit to set aside the lease, avail itself of the fact that some of the bondholders of the old company had not exchanged their bonds for stock and denied the validity of the organization of the new company.

Nor of the fact that no provision was made in the lease for the payment of certain creditors of the company.

Injuries to bondholders or creditors can be shown and redressed only when they complain of them.

[Argued October 8th—decided December 14th, 1885.]

SUIT for an injunction against the leasing of a railroad; brought to the Superior Court in Middlesex County.

The complaint alleged that the New Haven, Middletown & Willimantic Railroad Company was incorporated by the legislature of this state in 1867 with power to construct and operate a railroad between the city of New Haven and the borough of Willimantic, and that it did construct and

begin to operate such road; that by its charter the several towns on the line of the proposed road were empowered to aid the company by subscribing for its stock, by advancing money and their bonds to the company, and by guaranteeing its bonds; that the several towns on the route had thus advanced or become obligated for over $2,000,000 for the company; that the company was authorized to issue three millions of coupon bonds, payable in twenty years, secured by a mortgage to the state treasurer as a trustee for the bondholders, of its franchise and all its property, such bonds to become due at the option of any holder on six months default of payment of any interest coupons; that such bonds were issued and disposed of in the market; that the company made default in its interest and the mortgage was foreclosed by the trustee; that the bondholders, under a resolution of the General Assembly were immediately after, in 1875, incorporated as a new company by the name of the Boston & New York Air Line Railroad Company, the present defendants; that by the act of incorporation the stock of the new company was to consist of forty thousand shares of the par value of one hundred dollars each, of which thirty thousand were to be preferred stock and ten thousand to be common stock; that every holder of stock, whether preferred or common, was to be entitled to one vote in the meetings of the company for every share of the stock; that no dividend was to be made on the common stock until one of seven per cent. had been made on the preferred from the earnings of the company; that the plaintiff town was the owner of eleven hundred and twenty shares of the common stock and had been so before the transactions to be stated; that the common stock before these transactions had been worth in the market twenty-five dollars a share, making the whole stock held by the plaintiff worth at that time twenty-eight thousand dollars; that the defendant company had in September, 1882, made a preliminary contract for a lease of the road to the New York, New Haven & Hartford Railroad Company for ninety-nine years from September 30th, 1882, at an annual

rental of $120,000, and was about at a meeting of the company to ratify and establish the lease ; that this rental was to be paid, not to the defendant company, but to the preferred stockholders directly by a certain percentage on their stock ; that there was a large amount of unpaid taxes and other claims on the property not provided for in the contract ; that the entire income and resources of the property were thus placed out of the control of the corporation and were appropriated for the benefit of the holders of the preferred stock in fraud of the holders of the common stock, and that the common stock would become worthless if the transaction was carried out ; praying for an injunction against the approval and adoption of the lease by the defendant company.

The charter of the New Haven, Middletown & Willimantic Railroad Company, to all the rights of which the defendant company had succeeded, was annexed to the complaint and made a part of it.    By it that company had the right to lease its road to any other railroad company whose road connected with theirs.    By a provision of the charter of the defendant company such lease could be made only upon a vote of three fourths of all the stockholders voting by shares of stock.

A temporary injunction was granted by a judge of the Superior Court and afterwards dissolved, and the lease was executed.    The case was thenceforth treated as a suit to set it aside.    The defendants demurred to the complaint, assigning the following grounds of demurrer :—

1. It is wholly grounded on the alleged invalidity of such a lease as the defendant is about to make, whereas said lease, if made, would be valid.

2. Said complaint alleges that said lease is invalid as against certain third parties, such as creditors of the defendant or owners of bonds of the New Haven, Middletown & Willimantic Railroad Company, who are not parties to this action ; whereas the only question properly arising in this action is whether such lease would be invalid as against the plaintiff.

3. Said charter of the defendant and all its proceedings thereunder, in said complaint alleged, are legal and valid.

4. The plaintiff, being a stockholder of this defendant, cannot in this action question the validity of its organization, or its right to take, hold and dispose of said railroad.

5. Said complaint states no case calling for an injunction or other equitable relief, as demanded therein.

The court (*Phelps, J.,*) sustained the demurrer and rendered judgment for the defendants. The plaintiff appealed.

*S. L. Warner* and *A. W. Bacon,* with whom was *S. A. Robinson,* for the appellant.

1. The provisions of the charter of the defendant company, so far as they authorize such a lease, are themselves of no effect, as impairing the obligation of a contract. All the subscribers to the stock of the defendant company made their subscriptions with a full knowledge of the terms of its charter, and in so doing they contracted with one another that that charter should be maintained in all its provisions. The law upon this point is clearly and vigorously stated in the case of *Kean* v. *Johnson,* 1 Stockt. Cha. R., 401, where a court of equity granted an injunction for a lesser offense than appears upon this record. The court say, on page 407: "As stockholders they own the road in common, to be employed in specified uses. Each has a share in the whole, and is to have a proportionate share in its profits. They have invested a portion of their capital in it, and in it alone. They have a right in the road and in every dollar it earns. The directors are their trustees to employ the joint capital in the management of the road, and the road only, to the end that from the investment the stockholders have chosen they may reap the contemplated profits. And this is the agreement of the stockholders among themselves. They each contract with the other that their money shall be so employed. What the majority determine within the scope of this mutual contract, they each agree to abide by; but there their mutual contract ends, and no majority, however large has a right to divert one cent of the joint capital to

any purpose not connected with and growing out of this original fundamental joint intention." If this is a violation of the "original fundamental joint intention," as expressed in the charter, a court of equity will enjoin against the consummation of such a contract. Pierce (on Railroads, p. 530,) says: "Equity will enjoin a corporation and its officers, at the suit of a stockholder, from entering into contracts or engaging in transactions which are in violation of the charter and involve a breach of trust on the part of the corporation and its officers." The same principle is laid down in our own state. *Pratt* v. *Pratt*, 33 Conn., 446; *Terry* v. *Eagle Lock Co.*, 47 id., 141.

2. This action of the defendants is in express violation of their charter. By the terms of that charter, subscribers to the common stock of the defendant company have the right to expect and the power to compel the officers and directors of that corporation to so manage its affairs as to make the preferred stock pay a dividend of seven per cent. and then divide the surplus among the holders of the common stock. The possibility of such a result gave the common stock its value of $25 per share. The corporation and its officers and stockholders were charged with a trust to bring about such a result, which by this lease they evade and abrogate. This unusual power is claimed by the defendant company because of the power given them to lease their road by their charter and the statutes of the state. But a power to lease gives the company no power to make such a lease to the injury of a single stockholder or a class of stockholders. 1 Redfield on Railways, 72. The acceptance by the majority of a corporation of an amendatory act does not bind the minority. *New Orleans &c. R. R. Co.* v. *Harris*, 27 Miss., 517. In this case the court say:—"The incapacity of the majority to alter fundamentally the charter, against the consent of even a single corporator, was recognized by the vice-chancellor in the case of *Cunliff* v. *Manchester & Bolton Canal Co.*, 2 Russ. & Mylne, 480, note." The court further say, (p. 540:)—"When a person becomes a member of an incorporated company by his subscription to the stock, he

Town of Middletown v. Boston & N. York Air Line R. R. Co.

agrees to be bound by the terms of his contract as defined
in the charter of incorporation; he agrees to be bound by
the acts of the corporation and its officers performed within
the scope of the charter powers; but upon no principle can
it be held that he impliedly consents to any alteration which
would work a radical change in the structure of the associa-
tion, which might be voted or accepted by a majority of the
whole of the corporators, and thereby be subjected to bur-
dens and obligations wholly foreign to the purposes and
objects of the original charter." An act beyond the scope
of the constitution of the company requires the consent of
all the members. *Burmester* v. *Norris*, 21 Law Jour. N. S.
Exch., 43. In *Kent* v. *Quicksilver Mining Co.*, 78 N. York,
159, the court say:—"A private corporation cannot repeal
a by-law so as to impair rights which have been given and
become vested by virtue of the by-law, and this although
the power is reserved by its charter to alter, amend or re-
peal its by-laws." And the court further say:—"Upon the
purchase of shares of the stock of such a corporation, and
the issue to the purchaser of the certificates therefor, he
acquires a vested right, and any action of the corporation
which divides the shares of its stock sold and in the hands
of lawful owners into two classes, and gives to one class a
preference over the other in sharing the earnings of the cor-
poration, materially and injuriously affects the rights of the
owners of the latter class, and if without their assent or
acquiescence, is illegal." In *Da Ponte* v. *Northern Pacific
R. R. Co.*, 21 Blatchf., 534, WALLACE, J., says:—"An ac-
tion by a shareholder against a corporation to restrain it
from a contemplated transaction which is ultra vires may be
maintained by the stockholder, and must be sanctioned by
the court, although all the other stockholders of the corpo-
ration are willing to assent to and affirm the proposed
course of action. In such a case the question is not one of
discretion or expediency. The right of the stockholder to
maintain the action and enjoin the transaction is personal
to himself and independent of any right or interest of the
corporation, and must be recognized although all the other

members are arrayed against him. It seems to be a clear, unquestioned principle of law that a majority of a corporation cannot impair the rights or increase or affect the liability of any member of the corporation." *Trustees of Free Schools* v. *Flint*, 13 Met., 539; *Peabody* v. *Flint*, 6 Allen, 52; *Flint* v. *Pierce*, 99 Mass., 69; *Black* v. *Del. & Raritan Canal Co.*, 24 N. Jer. Eq., 455; *Const* v. *Harris*, Turner & Russ., 496, 525; Green's Brice's Ultra Vires, 552; *Hawes* v. *Oakland*, 104 U. S. Reps., 460. Of course the court can see that this action completely annihilates the common stock of the defendant company. If this lease is valid for ninety-nine years, at the expiration of that term it can be renewed for ninety-nine years more, and so on till the end of time, thus blotting out the common stock forever.

*S. E. Baldwin*, for the appellees.

*BEARDSLEY, J.—This case comes before this court by appeal from the judgment of the Superior Court that the complaint is insufficient. The plaintiff alleges, in substance, that it is the owner of eleven hundred and twenty shares of the common stock of the defendant company; that said company is about to lease its railroad to the New York, New Haven & Hartford Railroad Company for the term of ninety-nine years, at the annual rental of $120,000, to be paid by the lessee to the preferred stockholders of the defendant company, in proportion to the amount of stock held by them respectively; praying for an injunction against the proposed lease. A preliminary injunction was issued upon this complaint by the Superior Court, which was afterwards dissolved, and the lease was executed. The plaintiff now seeks to have the same set aside, claiming that it violates its rights as such holder of common stock by depriving it of any participation in the earnings of the defendant company for the period of the lease and rendering its stock of little or no market value.

Whether the defendant has the right to make this lease

* Judges BEARDSLEY and STODDARD of the Superior Court sat in the places of Judges PARDEE and GRANGER, disqualified by interest.

Town of Middletown *v.* Boston & N. York Air Line R. R. Co.

must of course depend upon the provisions of its charter. If the charter authorizes the lease, the fact, if it be so, that it will reduce or destroy the market value of the plaintiff's stock, cannot defeat the right of the company to make it. The plaintiff, as a stockholder in the defendant company, is subject to all the conditions contained in its charter affecting its relation to the other stockholders as well as to the public. By the defendant's charter the bondholders of the New Haven, Middletown & Willimantic Railroad Company were incorporated into a new company, which succeeded to all the property and rights of the old one. The charters of both these companies, and the lease in question, are made part of the plaintiff's complaint. The charter of the New Haven, Middletown & Willimantic Railroad Company provided that the company might lease its road to any railroad company with whose road it might intersect. (Sec. 7 of charter.)

The defendant's charter provided that it should not so lease without the approval of three fourths of the stockholders of the company. (Sec. 9 of charter.)

The defendant's charter also provides that the capital stock shall consist of not over forty thousand shares, of which not exceeding thirty thousand shares shall be preferred stock, and not exceeding ten thousand shares shall be common stock, (secs. 2 and 3 of charter,) and that no dividends shall be declared upon the common stock until dividends have been declared upon all the preferred stock, equal to seven per cent a year thereon. (Sec. 5 of charter.) The shares of stock being of the par value of $100 each, the rent received will amount to only four per cent upon the preferred stock.

But it is claimed that although there is no restriction in the language of the charter as to the term for which the company may lease its road, or as to the rent to be received, yet it is unreasonable so to construe it as to enable three fourths of the stockholders to make a lease which deprives the other fourth of any chance for dividends for so long a period, and hence that the lease in question is not a rightful and lawful exercise of the power given by the charter. We

see no ground for this claim, especially in view of the fact that leases of railroads are, and from the nature of the case must generally be, made for long terms. Railroads are leased, as they are built, with a view to the advantages to arise in the distant future from the development of population and business in the neighborhood by the facilities for transportation which they afford.

The complaint also charges that by the provisions of the lease the entire resources of the defendant company from which income can be derived are fraudulently appropriated for the benefit of the holders of the preferred stock. This is not a charge of fraudulent conduct or intent in the making of the lease, but only that by its operation the income will be fraudulently appropriated for the benefit of the preferred stockholders. This is simply an allegation that this appropriation of the income will be disastrous to the common stockholders and wrongful; not that the preferred stockholders have acted fraudulently. If the company had the right, as it clearly had by its charter, to make the lease upon a three fourths' vote, the court can not regard the effect of the lease as wrongful, or in any proper sense fraudulent. *Van Weel* v. *Winston*, 115 U. S. Reps., 237.

The complaint also charges that certain of the bondholders in the old company have not converted their bonds into stock, and deny the validity of the organization of the new company, and that by the contract of lease no provision is made for the payment of certain creditors of the company. If this be so, we do not see upon what principle the plaintiff can avail himself of it as a ground of relief in this case. Injuries done to bondholders or creditors can only be made apparent and redressed when they complain of them.

The questions arising between the defendant company and a bondholder who claimed that he had not converted his bonds into stock, were determined adversely to the bondholder at the present term of this court. *Gates* v. *Boston & N. York Air Line Railroad Co.* (supra, p. 333.)

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.