GLENN W. TRAER, Appellant, v. LUCAS PROSPECTING COM-
PANY *et al.*

Corporations. CHARTER. The charter of a corporation organized
1 under the general law consists of its articles together with the
law under which the organization is perfected.

Sale of entire corporate property. Where the charter contains the
2 authority, a sale of the entire property may be made without the
unanimous consent of the stockholders, although the corporation
is not insolvent.

Exercise of corporate power. A corporation cannot exercise the
3 powers designated in Code, section 1609, unless so authorized by
its articles of incorporation.

Sale of entire property: CHARTER CONSTRUED. The corporate charter
4 in question is reviewed, and held to confer the power to dispose
of all corporate property without the unanimous consent of the
stockholders.

Sale of entire property: PURCHASE OF CORPORATE STOCKS. A charter
5 which confers power to dispose of all corporate property and also
empowers the corporation to deal in stocks of other corporations,
may sell all of its property for stock in another corporation, even
though the transaction amounts to a consolidation.

Loans in excess of limit: VALIDITY. Where a corporation has bor-
6 rowed money in excess of its authorized indebtedness, and the
same has been used for the benefit of the corporation, the stock-
holders cannot question the validity of the transaction, though the
money was used for *ultra vires* purposes.

*Appeal from Wapello District Court.*—HON. ROBERT SLOAN,
Judge.

SATURDAY, APRIL 16, 1904.

SUIT in equity, praying that the defendant Lucas Prospecting Company be restrained from selling or transferring its property, and that certain notes and mortgages executed by it be adjudged void and canceled. The Lucas Prospecting Company was incorporated under the general incorporation law of this State (Code, title 9, page 587) on the fifteenth day of January, 1898, with a capital stock of twenty thousand dollars. Its articles of incorporation provided as follows: " The business of this corporation shall be to purchase and to own in fee simple or other freehold estate, or to purchase and hold by leasehold or license any mineral or supposed mineral lands or rights in such lands in the State of Iowa or elsewhere. Also the right to sell and convey such lands or lease the same, or sub-lease its leasehold rights in the same, for mining purposes or for any other purposes and to receive and appropriate to its own use or contract or dispose of any money, rents, royalties, profits or other proceeds therefrom arising, to purchase, sell and deal in the corporate stocks of corporations authorized to conduct mining operations, or stores for the selling of merchandise, powder or mine supplies or any business in or about mines, and said corporation shall have full power to prospect lands for coal or other minerals or mineral products, and to do any and all such other matters and things that may aid and promote its aforesaid purposes of organization." It " shall have power * * * to make contracts, own, acquire and transfer real and personal property, and generally to have the same rights and powers in such respects as natural persons." The " board of directors shall have power * * * to sell, lease or mortgage property and franchises, and all and singular the property rights and privileges of this corporation." For some time prior to the incorporation of the Lucas Prospecting Company, Mr. William Haven, one of the incorpora-

tors thereof, had prospected for coal in Lucas county, and had obtained option contracts on a considerable acreage of supposed coal land.   This work was done under an agreement that, when the incorporation was formed, the property and the option contracts should be transferred to the corporation, which was done.   After the prospecting company was incorporated, its officers, with the full knowledge and consent of all of its stockholders, made various attempts, but without success, to interest capital in the organization of a mining company for the development of its properties.   The Inland Coal Company was incorporated late in December, 1900, and its articles of incorporation provided that "the business of this corporation shall be to acquire, purchase, lease, option, own, sell and mortgage coal lands, or supposed coal lands, mineral estates, in the State of Iowa or elsewhere; to buy and sell real estate; to prospect for coal and mine coal and other minerals or mineral products and generally to buy, sell, handle and deal in and market coal of all kinds; to purchase, acquire and contract all kinds of machinery, buildings, cars and appliances for mining and marketing coal; to construct and operate railways and tramways for mining and moving coal; to build and lease houses for the use of miners and others, including the purchase and sale of same; to purchase, sell and deal in corporate stocks of other corporations, including railway stocks and bonds; and to do such other acts and things as may aid and promote the general purposes of the corporation and as may be necessary and convenient in the proper and successful transaction of its business.   The business of the corporation to be managed by a board of five directors."

On the thirty-first day of December, 1900, the Lucas Prospecting Company and the Inland Coal Company entered into a written contract wherein the latter company was authorized to enter upon the property of the former for the purpose of sinking shafts, driving entries, and doing other things necessary to determine whether the land contained coal

worth mining. The Inland Company agreed to expend not to exceed ten thousand dollars in prospecting the property, and to protect the prospecting company's options, leases, and deeds. The prospecting company agreed, on its part, that it would secure the repayment to the Inland Company of the amount so expended, by executing its notes, secured by a mortgage on all of its property, to a trustee, for such purpose. In the same contract an option was also given the Inland Company to purchase an undivided fifty-five and one-half per cent. interest in the property, and, in case it decided to exercise such option, it was agreed that a new corporation should be formed, to which all of the property was to be transferred, and forty-four and one-half per cent. of its stock delivered to the Lucas Prospecting Company in full payment of its interest in said property. It was further agreed that the new corporation should issue its bonds to the amount of one hundred and twelve thousand and five hundred dollars due in twenty years, drawing six per cent. interest, and secured by mortgage or trust deed on all of its property; the Inland Company binding itself to take or market the bonds at eighty cents on the dollar, to provide funds for a working capital, and to built a short-line railroad for the purpose of transporting the coal from the mines to another road. In consideration of these agreements, the Inland Company was to receive fifty-five and one-half per cent. of the stock of the new corporation. The amount of money which the Inland Company agreed to furnish was subsequently enlarged by agreement, and notes aggregating twenty-five thousand dollars were executed and delivered to said company, all of which were secured by mortgages on the property of the prospecting company. The Inland Fuel Company was incorporated in this State on the twenty-eighth of April, 1902, with a capital stock of two hundred thousand dollars. The incorporators were the four incorporators of the Inland Coal Company and William Haven, one of the incorporators of the Lucas Prospecting Company. Its object, business, and powers were

practically the same as those of the Inland Coal Company. On the fourteenth of August, 1902, the latter company elected to purchase the property in question under the option heretofore referred to, and, by resolution, requested the Prospecting Company to transfer its property to the Inland Fuel Company. This was done, and the Inland Fuel Company issued to the prospecting company the amount of stock it was to receive by the terms of its agreement with the Inland Coal Company. Of the remainder of the stock, there were issued to the Inland Coal Company one thousand one hundred and five shares, and to C. H. Smith, Wm. Haven, S. H. Mallory, and W. Beckwith, four of the incorporators of the Inland Fuel Company, one share each, and to W. H. Warren, one share. The fuel company also assumed, as a part of the consideration for the transfer, the twenty-five thousand-dollar mortgage indebtedness to the coal company, and certain other mortgage indebtedness of the prospecting company, aggregating about six thousand dollars. The plaintiff is the owner of stock issued by the Lucas Prospecting Company, which was purchased for him by one of his attorneys herein; all but four and seven-eighths shares thereof having been bought after January 1, 1900. There was a decree dismissing the plaintiff's bill for want of equity, and he appeals.— *Affirmed.*

*J. C. Mitchell* and *Wm. McNett,* for appellant.

*Babb & Babb* and *Jaques & Jaques,* for appellees.

SHERWIN, J.— The relief sought by the plaintiff is two-fold: He prays that the contract between the Lucas Prospecting Company and the Inland Coal Company, and the transfer of the Lucas Company's property to the Inland Fuel Company pursuant to said contract, be set aside and declared void, because *ultra vires,* and that the mortgages executed by the Lucas Company to the coal company be declared void so far as they exceed the limit of indebtedness fixed by the articles of incorporation of the former company.

On the first of these propositions, it is contended that the contract in question was an undertaking to convey all of the Lucas Company's property, and that neither the directors nor a majority of the stockholders of that company had the power to sell all of the corporate property, as against the dissent of a single stockholder, unless the corporation was insolvent or in a failing condition.    The answer to this contention must be predicated upon the express or implied power conferred upon the Lucas Prospecting Company by its articles of incorporation, and by the general incorporation laws of this State. · The charter of a corporation formed under a general law consists of its articles of incorporation, taken in connection with the law under which the organization takes place.    The provisions of the law enter into and form a part of its charter, and the charter, thus construed, contains the " terms of the agreement of the association between the shareholders, and indicates the character and extent of the business in which the company shall engage."    1 Morawetz on Private Corporations, section 318; Cook on Corporations (5th Ed.), section 669.

**1. CHARTERS.**

When a person becomes a shareholder in a corporation, he assents to the transaction of the business expressly or impliedly authorized by its charter; and therefore, if the charter authorizes the sale or other disposition of all of its property, he cannot complain.    It is a well-settled rule that a strictly private corporation has the same right to dispose of its property that an individual has, and that, when insolvent or in a failing condition, it may sell all thereof without the consent of all of the shareholders, and this much is conceded by the appellant. It is the general rule, however, that " neither the directors nor a majority of the shareholders of a corporation have power at common law to sell or otherwise transfer all its property while the corporation is a going, prosperous concern,    *    *    *    as against the dissent of any shareholder." Cook on Corporations, section 670; 10 Cyc. 1139; *Abbott v.*

**2. SALE OF ENTIRE CORPORATE PROPERTY.**

*American Hard Rubber Co.,* 33 Barb. 578; *March v. Eastern R. Co.,* 43 N. H. 523; *Lauman v. Lebanon Valley R. Co.,* 30 Pa. 42 (72 Am. Dec. 685); *Byrne v. Schuyler Electric Mfg. Co.,* 65 Conn. 336 (28 L. R. A. 304); *Elyton Land Co. et al. v. Dowdell,* 113 Ala. 177 (20 South. Rep. 981, 33 L. R. A. 264, 56 Am. St. Rep. 76); *People v. Ballard,* 134 N. Y. 269 (32 N. E. Rep. 54, 34 Am. St. Rep. 275).

It is said by the appellees that because section 1609, paragraph 6, of the general incorporation law of the State, gives a corporation the power " to make contracts, acquire

**3. EXERCISE OF CORPORATE POWER.** and transfer property, possessing the same power in such respects as natural persons," it has " implied power to dispose of any or all of its property whenever this is deemed expedient in carrying out the purposes for which it was organized." A part of this proposition may be conceded, so far as a private trading or manufacturing corporation is concerned, because of the very nature of its business. But it is evident that this statute only designates the powers which a corporation may provide for in its articles of incorporation, and exercise them only when it has so provided; otherwise articles of incorporation, no matter how limited the business they might provide for, would be no check upon the power of the corporation.

It is argued further that such has been held to be the rule in this State, and we therefore find it necessary to review the cases which it is claimed so hold. In *Dunham v. Isett,* 15 Iowa, 294, the sole question was whether a railroad company had the power to mortgage its property and earnings for borrowed money, and it was held that it had such power. In *Buel v. Buckinham & Co.,* 16 Iowa, 284, the contest was between the creditors of the corporation and the purchaser of all of its property. It was held that its charter and by-laws impliedly authorized the sale. The proposition that all of the property of a private corporation may be sold, with the assent of the shareholders, is universally held. *Thompson v. Lambert,* 44 Iowa, 239, was a case where the corporation had

borrowed money and given security therefor, and the suit was by a stockholder to declare the act *ultra vires.* It was held that the power to borrow impliedly existed, though not expressly given by the articles of incorporation. In *Warfield, Howell & Co. v. The Marshall County Creamery Co.,* 72 Iowa, 666, the corporation was insolvent, and the suit was brought by a creditor to have a sale of all of its property declared *ultra vires.* It was said in the opinion that " corporations can make contracts and transfer property, possessing the same power in such respects as individuals. Such is the rule in the absence of a statute, and therefore it has the right to prefer one creditor to another." The holding in *Mahaska County R. Co. v. Des Moines Valley R. Co.,* 28 Iowa, 437, was that a sale of property was valid where the articles of incorporation gave such power to the directors. *Sawyer v. Dubuque Printing Co.,* 77 Iowa, 242, was a suit by a shareholder to set aside a sale of the entire property of the corporation because *ultra vires* and fraudulent. The corporation was in a failing condition, and the sale was upheld. In *West v. Averill Grocery Co.,* 109 Iowa, 488, the precise question we are now considering was not involved. But it was there held that, if the articles of incorporation do not prohibit such contracts, corporations may purchase and surrender their own capital stock. In *Price v. Holcomb,* 89 Iowa, 123, it was said that where the business of a corporation had been operated at a loss, and its works had been idle because the corporation was without necessary working capital, and because it was unable to secure it, and no practical plan for putting the works in operation had been agreed upon, though frequently discussed, and it was apparent that no agreement could be reached by which the works could be operated or leased, a sale could be made of the property and business of the corporation against the protest of the minority. This case was decided on the peculiar facts appearing therein, and cannot be said to be authority for the broad claim made by

the appellees.   We shall have occasion, however, to refer to
it again later on.

The question of the insolvency or failing condition of
the Lucas Prospecting Company must be eliminated from
the case, because of its answer denying such condition, and
because the evidence wholly fails to prove it;
and we go to the charter of the company, to de-
termine whether it is therein given the power

4. SALE OF ENTIRE PROPERTY: charter construed.

to sell and transfer all of its property.   The business of the
Lucas Company, as disclosed by its articles of incorporation,
was to " purchase and own in fee simple or other freehold
estate, or to purchase and hold by leasehold or license, any
mineral or supposed mineral land, or rights in said land,"
and " to prospect lands for coal or other minerals or mineral
products, and to do any and all such other matters and things
as may aid and promote its aforesaid purposes of organiza-
tion."   The controlling purpose of the corporation, as thus
expressed, was not to conduct mining operations itself, but
to secure mineral or supposed mineral lands, and to prospect
them.   The power to sell and convey any rights thus ac-
quired is expressly given.   The dominant thought, as it seems
to us, was to secure control of such lands, either by purchase
or otherwise, for the purpose of sale or lease to some indi-
vidual or association desiring either to speculate further with
such rights, or to actually mine the properties; otherwise no
benefit could be derived from the business of the corporation.
These provisions would alone indicate that it was the intent
and purpose to sell any or all of these property rights when-
ever it might be to the advantage of the corporation to do so.
This thought is further emphasized by the power given in the
same article to receive and appropriate to its own use, or
control or dispose of, any money, rents, royalties, profits, or
other proceeds arising from such sales or transactions, and
by the further authority given to the board of directors to
" sell, lease, or mortgage property and franchises, and all and
singular the property rights and privileges " of the corpora-

tion. The express power here given, construed in connec-
tion with the declared object and business of the corporation,
and the general power to sell given by the terms of article 2,
clearly conferred the power to sell all of the property of the
corporation, notwithstanding the dissent of any individual
shareholder. *Mahaska County R. Co. v. Des Moines Valley
R. Co., supra; Town of Middleton v. Boston & N. Y. A. L.
R. R. Co.,* 53 Conn. 351 (5 Atl. Rep. 706).

It is undoubtedly the general rule that a corporation
may not sell any part or all of its property for other than a
cash consideration, unless authorized so to do by its charter.

**5. SALE OF ENTIRE PROPERTY: purchase of other stocks.** Here no cash was to be paid by the purchasing corporation, and no other consideration than its stock, and it had no property other than that
purchased of the Lucas Company. But the articles of in-
corporation expressly gave the Lucas Company the right to
purchase, sell, and deal in the corporate stocks of corporations
authorized to conduct mining operations. It had mining
rights and property for sale, but no power to mine; hence
we think the power to exchange or sell its properties for the
stock of a corporation which would engage in the business,
clearly implied. Indeed, we have held that a trading cor-
poration, unless prohibited by its charter, may buy and sell
the stock of another corporation. *Iowa Lumber Co. v. Fos-
ter,* 49 Iowa, 25; *West v. Averill Grocery Co., supra.* In
*White et al. v. Marquardt & Sons,* 105 Iowa, 145, it was
said: " The evidence shows that the defendant was organ-
ized for the purpose of doing the business of a dealer and
jobber in jewelry, including all such kinds and classes of
merchandise as are usually handled by the largest wholesale
jewelry houses in the United States, and that it transacted
the business for which it was organized. It purchased the
stock in the ordinary course of business, exchanging it for
merchandise in which it was dealing. Its articles of incor-
poration did not impose any limitation as to the kind of
property it might take in exchange for its merchandise, and

the shares of stock it received were property." It was held that the purchase of the stock was authorized and valid. And such was the holding in *Calumet Paper Co. v. Investment Co.,* 96 Iowa, 147, and in *Latimer & Inglis v. State Bank,* 102 Iowa, 162. The Lucas Company having the power to sell and transfer all of its property, and the power to purchase the stock of another corporation, it follows that it had the power to so invest all of its property. *Franklin Co. v. Lewister Savings Bank,* 68 Me. 43 (28 Am. Rep. 9); *Treadwell et al. v. Salesbury Mfg. Co. et al.,* 7 Gray, 393 (66 Am. Dec. 490); *Booth v. Robinson,* 55 Md. 419. In the case of *Elyton Land Co. et al. v. Dowdell,* 113 Ala. 177 (20 South. Rep. 981, 59 Am. St. Rep. 105), the charter of the land company authorized it to buy and sell lots, " with the view to the location, laying off, and effecting the building of a city at or near Elyton, and to build, own, rent, lease buildings, * * * and issue bonds, * * * and take stock in other corporations." It was said by the court that " by the sale and transfer of the property the Elyton Land Company divested itself of all its property and capacity to continue the business for which it was organized," and it was held that such act virtually worked a dissolution of the corporation, and for that reason and others not necessary to here mention the sale was *ultra vires.* There is a well-marked distinction, however, between that case and this. There the business of the corporation was to build, own, and lease houses, etc., and upon the sale of all of its property the corporation was in fact practically dissolved, while here the purpose and business of the Lucas Company was, as its name indicates, to prospect for and own mineral lands, which could be of no value unless they were to be eventually developed and worked by some one; and, as we have heretofore said, the Lucas Company had no such power. In *Mason v. Pewabic Mining Co.,* 133 U. S. Rep. 50 (10 Sup. Ct. Rep. 224, 33 L. Ed. 524), the corporation had expired by limitation, and it was held that its property could not be sold to another cor-

poration for its stock at private sale, and for much less than its value.   Many other cases are cited by the appellant on the proposition under consideration.   We have carefully examined each of them, and find that they were made to depend so largely upon the charter — as, indeed, they must have been — that they are not controlling here, and we do not take the time to review them.

It is said, also, that the transaction in question amounts to a consolidation of the two corporations, and that, if upheld, it virtually compels the plaintiff to enter a corporation with greatly enlarged powers, and subjects him to liabilities which he did not undertake to assume; in other words, that it makes a new contract for him.   There is nothing in the transaction which prohibits the Lucas Company from still prosecuting the business for which it was organized, but, if it be conceded that the sale of this property amounted to a consolidation of the two corporations, in fact, it was entirely competent for them to consolidate, if the charter so provided, or if the power therein conferred naturally and inevitably led to such a result.   *Mayfield v. Alton Ry., Gas & Electric Co.,* 198 Ill. 528 (65 N. E. Rep. 100).   The plaintiff does not become a shareholder in the fuel company.   Nor is he obliged to take any of the stock issued by it.   He does not assume any of its liabilities by retaining his stock in the Lucas Company, because his liability is fixed and determined by its charter. It is true that the prosperity of the Lucas Company may depend upon the earning capacity of its fuel company stock, and that through this channel the plaintiff's stock in the Lucas Company may be affected.   But the value of the plaintiff's stock has at all times depended upon the property and prosperity of the Lucas Company, and, unless it has been guilty of fraud which will affect the value of his stock, he must take his chances in its investments.   There is nothing in the record in this case even tending to show that the transaction was not fair and honest, and for the best interests of the Lucas corporation and its stockholders.   Indeed,

the record presents very nearly such a case as was before the court in *Price v. Holcomb*, 89 Iowa, 123. The prospecting company held properties, in the form of options, leases, etc., which it believed valuable, but was without means to fully prospect and develop. It made many efforts to interest capital in the venture, with the assent and co-operation of all the stockholders, including those then owning the stock now held by the plaintiff, and it was unable to accomplish anything until the Inland Coal Company took hold of it.. Under very similar circumstances, it was held in the case last cited that the sale was warranted, and not a fraud upon the minority stockholders. And in this case it is shown that the value of the plaintiff's stock has been very materially increased by the transaction.

We reach the conclusion that the sale and transfer were not beyond the charter powers of the corporation, and that it was fully authorized to sell the same for the stock of the other corporation. See, also, *Miners' Ditch Co. v. Zellerbach*, 37 Cal. 543 (99 Am. Dec. 300).

The appellant's contention that the indebtedness of the Lucas Prospecting Company, represented by the notes and mortgages in trust for the Inland Coal Company, should 6. LOANS IN EXCESS OF LIMIT: validity. be declared void because in excess of its authorized indebtedness, cannot be sustained. The money was advanced by the Inland Company and paid out for the benefit of the prospecting company and its stockholders. They have received the full benefit of this money in the protection of their rights and property, and none of the stockholders can now question the validity of the transaction. *Beach v. Wakefield*, 107 Iowa, 567; *Marshall Field & Co. v. Ruffcorn Co.*, 117 Iowa, 162; Cook on Corporations, section 760, and notes. Nor can the fact that.the money borrowed was used for an *ultra vires* purpose affect the rule. Cook, *supra*.

In view of the conclusions which we have reached on the main proposition urged by counsel, we do not deem it neces-

sary to consider the appellees' contention that the plaintiff is estopped by the acquiescence of his assignors, and that this suit was instituted for the benefit of a rival corporation.

The judgment is AFFIRMED.